**CASE NO. 24-13138**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

A.B., a minor, by and through her next friend and parent, J.B.,

Plaintiff - Appellant

v.

DAVID JACOB BARROW and NATIONWIDE MUTUAL INSURANCE
COMPANY, a corporation

Defendants – Appellee

---

On Appeal from

U.S. District Court for the Northern District of Alabama, Northern Division

Case No.: 4:22-cv-01314-CLM

---

Gregory A. Reeves
The Reeves Law Firm
232 Moulton St E
Decatur, AL 35601
256.355.3311

greg@reeveslaw.net

## Certificate of Interested Persons

The undersigned counsel of record for Appellant, A. B., certifies that the following persons or entities have an interest in the outcome of this case:

1.      A. B., an adult residing in Alabama and is the Appellant;

2.      Barrow, David, the policyholder / insured of Nationwide;

3.      Beck, James, Attorney for Appellee Nationwide;

4.      Henderson, David, Attorney for Appellee Nationwide;

5.      Long, Felicia, Attorney for Appellee Nationwide;

6.      Maze, Corey L., District Judge for the Northern District of Alabama;

7.      Upon information and belief, NFS is the stock ticker symbol, which stands for Nationwide Financial Services Inc. which operates as a holding company for Nationwide Mutual Insurance Co., Appellee.

8.      Reeves, Gregory A., attorney for Appellant A. B.

**Statement Regarding Oral Argument**

This appeal presents substantial questions about insurance notice provisions and their interpretation under Alabama law.

The issues warrant oral argument for three reasons. First, the proper construction of policy language permitting notice from "someone on [the insured's] behalf" raises important questions about contract interpretation that would benefit from the Court's focused examination.

Second, the relationship between this permissive notice provision and Alabama's established precedent on notice requirements deserves careful analysis through oral discussion. Third, the district court's novel requirement that a third party must explain the insured's failure to provide notice - even when the policy expressly allows third-party notice - presents an issue of first impression that merits exploration at oral argument.

The Court's guidance on these issues will have significant implications for insurance practice throughout the Circuit.

# Table of Contents

Certificate of Interested Persons ...............................................................C-1

Statement Regarding Oral Argument .............................................................. i

Table of Contents ........................................................................................... ii

Table of Citations .......................................................................................... v

Jurisdictional Statement ............................................................................. viii

Statement of the Issues.................................................................................. 1

Statement of the Case.................................................................................... 2

    I.   The Course of Proceedings.................................................................. 3

        A.   Initial State Court Action and First Declaratory Judgment Action ........... 3

        B.   State Court Judgment and Second Declaratory Judgment Action ............. 4

        C.   Present Direct Action and District Court Proceedings ............................ 5

    II.  Statement of the Facts...................................................................... 6

        A.   Overview of Background Facts................................................... 6

        B.   Filing of Tort and Fraudulent Transfer Actions in 2018.......................... 6

        C.   Discovery of Insurance Coverage ............................................... 6

            1.   Initial Efforts to Identify Coverage............................................ 6

            2.   Objections and Delayed Responses ........................................... 7

            3.   Confirmation of Nationwide as Insurer ..................................... 8

4.    Nationwide's Involvement and Policy Production...................................8

5.    Evaluation of Insurance Coverage ........................................................8

D.    Both Parties filed MSJ as to Notice .......................................................11

E.    Civil Proceedings in Marshall County, Alabama ....................................12

III.  Standard of Review..........................................................................................13

Summary of the Argument.......................................................................................15

Argument...................................................................................................................18

I.    The District Court's Analysis Rests on Two Fundamental Errors That Warrant

Reversal ...........................................................................................................18

A.    The Court Failed to Give Effect to the Policy's Express Language

Allowing Third-Party Notice .........................................................................18

B.     The District Court Misapplied *Files* and *Miller* By Ignoring Critical

Distinctions ...................................................................................................20

C.    The District Court Confused Condition Precedent with Who May Satisfy

It    ………………………………………………………………………..24

D.    A.B.'s Notice Satisfied Its Essential Purpose Under Alabama Law ........24

E.    Alabama Law Establishes That Notice Requirements Are Triggered Upon

Receipt of the Policy, Not the Date of Occurrence...........................................25

F.    Alabama Courts Have Consistently Excused Substantial Notice Delays

When Justified By Circumstances ..................................................................30

G.     The District Court's Approach Invites Speculation Over Undisputed Evidence ........................................................................................31

II.   The District Court Erred by Basing Its Coverage Analysis on Conduct Outside the State Court Judgment and by Failing to Follow Rule 56 Standards ..............32

Conclusion ........................................................................................34

Certificate of Compliance ........................................................................37

Certificate of Service ............................................................................37

# Table of Citations

## Cases

*Ala. Space Sci. Exhibit Comm'n v. Markel Am. Ins. Co*., 557 F. Supp. 3d 1199, 1207 (N.D. Ala. 2021) ................................................................................................14

*Am. Liberty Ins. Co. v. Soules,* 288 Ala. 163, 169, 258 So. 2d 872, 876 (Ala. 1972). ................................................................................................ 16, 26, 27

*Cinq-Mars v. Travelers Ins. Co.,* 100 R.I. 603, 611, 218 A.2d 467, 472 (1966) ....29

*Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1390 (11th Cir. 1994)................................................................................................13

*Dill v. Colonial Ins. Co. of Cal.,* 569 So. 2d 385 (Ala. 1990) .................................30

*Hackleburg Church of Christ v. Great American Insurance Companies*, 675 So. 2d 1309, 1312 (Ala. Civ. App. 1995)........................................................................31

*Harris v. United Auto. Ins. Grp., Inc*., 579 F.3d 1227, 1232 (11th Cir. 2009)........33

*Hartford Cas. Ins. Co. v. Merchants & Farmers Bank,* 928 So. 2d 1006, 1013 (Ala. 2005) ................................................................................................ 33, 34

*Middlesex Mut. Ins. Co. v. Wells*, 453 F. Supp. 808, 810 (N.D. Ala. 1978) ...........27

*Nationwide Mut. Fire Ins. Co. v. Estate of Files,* 10 So. 3d 533 (Ala. 2008) .. 15,16, 20, 21, 22, 23

*Nationwide Mut. Ins. Co. v. Barrow*, 29 F.4th 1299 (11th Cir. 2022)......... 2, 4, 6, 24

*Reeves v. State Farm Fire & Cas. Co*., 539 So. 2d 252, 255 (Ala. 1989)...............25

*Stonewall Ins. Co. v. Lowe*, 284 So. 2d 254, 257 (Ala. 1973)........................... 26, 27

*Travelers Indem. Co. v. Miller,* 86 So. 3d 338 (Ala. 2011)............ 15, 16, 22, 23, 25

*United States Fid. & Guar. Co. v. Baldwin Cnty. Home Builders Ass'n*, 770 So. 2d 72, 75 (Ala. 2000)............................................................................................ 26, 30

*United States Fid. & Guar. Co. v. Bonitz Insulation Co.,* 424 So. 2d 569 (Ala. 1982) ............................................................................................................................30


## Rules

Fed. R. Civ. P. 56 ....................................................................................................1, 33

Fed. R. Civ. P. 56(c)(2)................................................................................................17

Rule 56 ................................................................................................................ 32, 34


## Statutes

28 U.S.C. § 1332(a)(1)...................................................................................................v

Ala. Code § 27-23-2 (1975) .....................................................................................5, 9


## Other Authorities

*A.B., a minor, by and through J.B. v. Barrow*, No. 4:22-cv-1314-CLM.......... v, 2, 5

*Nationwide Mut. Ins. Co. v. Barrow*, 4:19-01019-ACA............................... 3, 11, 23

*Nationwide Mut. Ins. Co. v. Barrow*, No. 4:22-cv-00725-RDP, 2022 WL 14068890

   (N.D. Ala. Oct. 24, 2022) ........................................................................5


**State Court Proceedings**

A.B. v. David Barrow and Ann Barrow, Case No. 50-CV-2018-900069 ..........6, 29

A.B. v. David Barrow in the Circuit Court of Marshall County, Alabama (Case No.

   50-CV-18-900065) ................................................................................6

## Jurisdictional Statement

This appeal is from a final judgment of the United States District Court for the Northern District of Alabama. *A.B., a minor, by and through J.B. v. Barrow*, No. 4:22-cv-1314-CLM. (Doc. 54).  The district court had jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the parties are deemed to be citizens of different states and the claimed amount in controversy exceeds $75,000.

The district court entered its final judgment on August 29, 2024. A.B. filed a timely notice of appeal on September 15, 2024.

## Statement of the Issues

### I

Did the district court err by ignoring the plain language of Nationwide's umbrella policy, which allows notice from "someone on [the insured's] behalf," and instead applying irrelevant precedent based on materially different policy language, thereby requiring this minor plaintiff to justify the insured's failure to provide notice rather than assessing the reasonableness of the notice given on her behalf?

### II

Did the district court misapply Fed. R. Civ. P. 56 by resolving factual disputes against A.B., the non-moving party, improperly considering prejudicial and irrelevant evidence of the insured's criminal conduct, and disregarding the state court's finding that liability was based solely on invasion of privacy - a covered claim under the policy - thereby denying A.B. a fair evaluation of the notice provided on her behalf?

**Statement of the Case**

This case returns to this Court, *Nationwide Mut. Ins. Co. v. Barrow*, 29 F.4th 1299 (11th Cir. 2022), following the district court's entry of summary judgment for Nationwide Mutual Insurance Company, "Nationwide," and denial of summary judgment for A.B.  See *A.B., a minor, by and through J.B. v. Barrow*, No. 4:22-cv-1314-CLM (Doc. 53, 54) (N.D. Ala. Aug. 29, 2024) (Maze, J.).

**Introduction**

Between 2012 and 2014, Nationwide insured David Barrow under an umbrella policy that covered claims for invasion of privacy and allowed either Barrow "or someone on [his] behalf" to provide notice of claims. (Doc. 19-15, p. 14). In February 2018, A.B. filed suit against Barrow in Marshall County Circuit Court for invasion of privacy based on his conduct in 2013, when she was ten years old. Through discovery in a related state court action, A.B.'s counsel learned of possible insurance coverage and subpoenaed Nationwide for any policies covering Barrow.

After receiving the subpoena, Nationwide produced its umbrella policy and retained counsel to defend Barrow. This defense continued for nearly three years through trial, where Judge Riley conducted a bench trial and found Barrow liable for invasion of privacy, entering a $10 million judgment. (Doc. 19-12).

2

A.B. then sued Nationwide directly to collect under the policy. The case was removed to federal court and the district court granted summary judgment to Nationwide, concluding that notice was insufficient because A.B. did not explain why Barrow himself failed to provide notice, even though the policy permitted notice from "someone on [his] behalf."

I.    **The Course of Proceedings**

A.    **Initial State Court Action and First Declaratory Judgment Action**

On February 2, 2018, A.B., a minor, filed a civil action in the Circuit Court of Marshall County, Alabama, alleging that David Barrow invaded her privacy when she was ten years old. (Doc. 19-7).  While this action was pending, Nationwide filed a declaratory judgment action in the United States District Court for the Northern District of Alabama.  *Nationwide Mut. Ins. Co. v. Barrow*, 4:19-01019-ACA ("Dec. Action 1) seeking a declaration that it owed no duty to defend or indemnify Barrow under his umbrella policy, asserting that Barrow failed to provide timely notice of A.B.'s claims.  *Id.*

In Dec. Action I, the Honorable Judge Annemarie Carney Axon granted A.B.'s partial motion to dismiss Nationwide's motion for summary judgment as unripe, allowing the case to proceed to resolution on the duty to defend issue. 4:19-CV-01019-ACA (Doc. 13).  The district court determined that Barrow had failed to provide timely notice of the claims against him and that A.B.'s later notice was

also untimely. Case 4:19-cv-01019-ACA. (Doc. 38). A.B. appealed and this Court

dismissed the appeal for lack of jurisdiction, concluding that A.B. lacked standing

due to the absence of injury. See *Nationwide Mut. Ins. Co. v. Barrow*, 29 F.4th

1299, 1303 (11th Cir. 2022).

### B.    State Court Judgment and Second Declaratory Judgment Action

Following dismissal of the appeal, A.B.'s invasion of privacy case

proceeded to a bench trial on April 11, 2022, before the Circuit Court of Marshall

County, Alabama (Tim Riley, Circuit Judge). Both parties were represented by

counsel, Barrow's counsel provided by Nationwide, and the trial proceeded on the

basis of the operative amended complaint, which contained only allegations of

invasion of privacy (Docs. 19-11, 19-12).

On May 9, 2022, Judge Riley entered judgment against Barrow, finding that

he had committed three separate violations of A.B.'s privacy rights in 2013, when

she was ten years old. The court awarded $4,000,000 in compensatory damages

and $6,000,000 in punitive damages based exclusively on A.B.'s invasion of

privacy claims. (Doc. 19-12, ¶¶ 36, 39).

After this judgment, Nationwide filed a second declaratory judgment action

("Dec. Action II") seeking a determination that it had no duty to indemnify Barrow

for the judgment against him. However, the district court dismissed Dec. Action II

as duplicative of the present direct action filed by A.B., which was proceeding in

4

parallel. See *Nationwide Mut. Ins. Co. v. Barrow*, No. 4:22-cv-00725-RDP, 2022 WL 14068890 (N.D. Ala. Oct. 24, 2022) (Proctor, J.).

### C.    Present Direct Action and District Court Proceedings

After Barrow failed to satisfy the state court judgment within 30 days, A.B. initiated a direct action against Nationwide and Barrow under Ala. Code § 27-23-2 (1975) in the Circuit Court of Marshall County, Alabama, seeking coverage under Barrow's umbrella policy through an order of hypothecation. (Doc. 1-1, pp. 3-14). Nationwide subsequently removed the case to the United States District Court for the Northern District of Alabama on October 12, 2022 where it was assigned to the Honorable Judge Corey L. Maze. (Doc. 1-2).

During a scheduling conference with the district court, Nationwide's counsel indicated that notice was an issue requiring initial determination. (Doc. 17). After the scheduling conference, the parties soon filed cross-motions for summary judgment as to the issue of notice. (Doc. 20, 29, 31, 33).  While these motions were pending, both parties submitted additional summary judgment motions addressing coverage under Barrow's umbrella policy. (Doc. 39, 45, 49 – 52).

On August 29, 2024, in a memorandum opinion, the district court granted Nationwide's motion and denied A.B.'s cross motion finding Nationwide had no duty to indemnify Barrow. 4:22-cv-1314-CLM (Doc. 53). The district court denied

5

the remaining motions addressing coverage as moot, basing its ruling solely on the notice issue. (Doc. 53, 54).

## II.     Statement of the Facts

### A.     Overview of Background Facts

The essential background facts are summarized in this Court's prior opinion, *Nationwide Mut. Ins. Co. v. Barrow,* 29 F.4th 1299, 1300–01 (11th Cir. 2022), which addressed Nationwide's duty to defend. However, this case concerns Nationwide's duty to indemnify, a determination that requires consideration of facts that were not ripe during the duty to defend analysis - such as the subsequent state court judgment finding Barrow liable for invasion of privacy and the basis for its findings.

### B.     Filing of Tort and Fraudulent Transfer Actions in 2018

On February 2, 2018, below signed counsel filed a civil tort action for A.B. v. David Barrow in the Circuit Court of Marshall County, Alabama (Case No. 50-CV-18-900065). (Doc. 19-7). On February 6, 2018, counsel filed a separate action in Marshall County against Barrow and his wife under the Alabama Fraudulent Transfer Act (AFTA), A.B. v. David Barrow and Ann Barrow, Case No. 50-CV-2018-900069. (Doc. 28-1, p. 2).

### C.     Discovery of Insurance Coverage

#### 1.     Initial Efforts to Identify Coverage

6

In the AFTA case, on May 23, 2018, before Barrow and his wife filed an

Answer, counsel sought discovery about their insurance coverage:

Interrogatory No. 2:

State the name and address of your property and casualty insurance agent or
agents during the year 2014 for all real estate owned, including umbrella
policies, rental, and business policies.

Request for Production No. 12:

Provide a copy of all insurance policies in force and effect in 2014 that
provided coverage generally for all real estate owned, umbrella policies,
business policies, and rental policies. This request includes all homeowner's
policies.

(Doc. 28-1, p. 3; Doc. 28-3, pp. 2, 8).

## 2.    Objections and Delayed Responses

Counsel sought this information to ascertain whether Barrow had insurance

which might afford coverage for what he did to A.B. (Doc. 28-1, p. 3). On August

6, 2018, David Barrow objected to the interrogatories and request for production.

(Doc. 28-4).

On August 20, 2018, Barrow's ex-wife, Ann Barrow, responded to the

discovery requests. (Doc. 28-9). In response to the request for insurance policies,

her counsel provided a box of responsive discovery materials for A.B.'s counsel to

pick up. (Doc. 28-9; Doc. 28-1, p. 4; Doc. 28-5, p. 1; Doc. 28-6, p. 2).

A.B.'s counsel retrieved the box of discovery documents from Ann's counsel's office on or about September 20, 2018. (Doc. 28-1, p. 4; Doc. 28-7, pp. 2-5).

### 3. Confirmation of Nationwide as Insurer

On September 25, 2018, A.B.'s counsel emailed Ann's counsel to confirm the identity of David Barrow's insurer and learned in reply: "Greg - I *think* it was Nationwide—David [Barrow] has a business policy on Mike's—Agent was J. Smith Lanier, Huntsville - *I am not aware of any umbrella policies*. George." (Doc. 28-1, p. 5; Doc. 28-10, p. 2). (emphasis added).

### 4. Nationwide's Involvement and Policy Production

On October 16, 2018, A.B.'s counsel issued a Notice of Intent to Serve a Subpoena on Nationwide, which was served on November 9, 2018. Nationwide responded to the subpoena and produced the requested policies, including the umbrella policy, on January 20, 2019 - 72 days after the subpoena was served. (Docs. 28-1, pp. 5 - 6; 19-15, p. 4; 28-13, pp. 2-5).

### 5. Evaluation of Insurance Coverage

On January 20, 2019, A.B.'s counsel received the umbrella policy from Nationwide. Four days later, on January 24, 2019, counsel engaged an insurance coverage attorney to review the policy. After completing the analysis on March 26, 2019, A.B.'s counsel sent formal notice to Nationwide on April 2, 2019 - 72 days

8

after receiving the policy. In the same timeframe it took Nationwide to produce the policy following service of the subpoena, A.B.'s counsel reviewed the policy, consulted a coverage attorney, and sent formal notice to Nationwide. (Doc. 28-1, p. 6).

This notice referenced the subpoena, which Nationwide admits had placed it on constructive notice of the claims against Barrow on November 9, 2018, before the umbrella policy had been produced. (Docs. 28-1, pp. 6–7; 19-16, pp. 3–4). Unfortunately, the district court's memorandum opinion makes no mention of this dispositive fact.

The formal notice also included a copy of the pending Marshall County complaint and advised of the intent to seek satisfaction of any judgment under Ala. Code § 27-23-2 (1975) stating in part:

> **You are already on notice of this litigation by virtue of a subpoena issued in the pending litigation to your agent, Randy Jones, in Guntersville, Alabama.  The purpose of this correspondence is to advise that if and when my client secures a final judgment against Mr. Barrow and/or any other defendant or additional insured under your policy, we intend to seek satisfaction of any such judgment from Nationwide, including relative to any and all rights available under Alabama Code § 27-23-2 (1975).**

(Doc. 28-1, pp. 6-7; Doc. 19-16, pp. 3-4) (emphasis added).

Nationwide's umbrella policy provided coverage to Barrow from November 2012 to November 2014 for "occurrences," defined as accidents resulting in personal injury caused by an insured. It lists "personal injury" as a covered event or

9

occurrence and specifically includes *invasion of privacy as an intentional tort covered under the policy*.  (Doc. 19-15, p. 5; 37-1).

The policy defines "occurrence" as:

> 5.      Occurrence(s) means an accident including continuous or repeated exposure to the same general conditions. It must result in bodily injury, property damage, or personal injury caused by an insured. The occurrence resulting in bodily injury or property damage must be during the policy period. The occurrence resulting in the personal injury must be due to an offense committed during the policy period.

(Doc. 19-15, p. 8).

"Personal injury" is defined as:

> 8. **Personal injury** means:
>
> ...
>
> c)      libel, slander, defamation of character, or **invasion of rights of privacy.**

(Doc. 19-15, p. 8).  (emphasis added).

As a condition for coverage, the policy provides:

> Notice. You **or someone on your behalf must:**
>
> a)      **as soon as reasonably practicable, give us, our agent, or sales representative written notice of an occurrence to which this policy may apply.**

10

      b)     promptly give us all legal papers or reports relating to the occurrence when a claim or suit is filed against an insured."

(Doc. 19-15, p. 14). (emphasis added).

On July 2, 2019, Nationwide retained counsel Daniel Newton from Birmingham to defend its insured. (Doc. 28-1, p. 6). Newton represented Barrow for 2 years and 9 months, through the trial of the state court tort action. (Doc. 19-12; 28-1, pp. 7-8). During the proceedings, Newton deposed A.B., defended Barrow's deposition, and represented Barrow at trial. (Doc. 28-1, pp. 7-8).

Nationwide simultaneously challenged its obligation to defend Barrow through separate counsel in the separate federal court action, *Nationwide Mutual Insurance Co. v. Barrow*, Case No. 4:19-cv-01019-ACA ("Dec. Action I").

### D.    Both Parties filed MSJ as to Notice

After removal of this direct action to federal court, A.B. filed a motion to remand.  The district court denied the same and, in so doing, mischaracterized A.B.'s state court judgment as a "default judgment" against Nationwide's insured. (Doc. 11).   A.B. filed a motion to correct the trial court's mistake for the reason that Alabama courts treat indemnity cases involving default judgments differently than cases that are defended by the insurer.

The district court held a scheduling conference where Nationwide's counsel indicated that notice was an issue requiring initial determination. The parties

subsequently filed cross-motions for summary judgment addressing the notice issue. (Doc. 20, 29, 31, 33).

In support of her motion for summary judgment on the notice issue, A.B. testified that she met Barrow in 2013 when she was 10 years of age -  at that time she did not know what insurance was. (Doc. 28-14). Even if told to inform someone with an insurance company about what had happened, she would not have known whom to contact, nor did she trust anyone. (Doc. 28-14, p. 2).

Nationwide supported its motion for summary judgment with an affidavit from an employee, Errol Whisler, who stated in language constituting an admission, that "at best, Nationwide was placed on constructive notice of the allegations against Barrow, at the very earliest, on November 9, 2018," when a subpoena was served on its agent, Randy Jones. (Doc. 19-14, pp. 3–4). While Whisler references the umbrella policy issued to Barrow (Doc. 19-15), he omits the policy's key language allowing notice to be provided by "someone on [the insured's] behalf." This omission could mislead the reader into believing that only the insured is authorized to give notice, contrary to the policy's terms.  (Doc. 19-14, pp. 3-4).

### E.    Civil Proceedings in Marshall County, Alabama

A.B.'s civil action against Barrow was tried before the Circuit Court of Marshall County, Alabama, on April 11, 2022, with both parties represented by

12

counsel, *i.e.,* Nationwide provided counsel for Barrow. (Doc. 19-12, p. 2). The only claim considered by Judge Riley was whether  Barrow had invaded A.B.'s right of privacy. (Doc. 19-12, p. 2).

Judge Tim Riley, as fact finder, determined that on three occasions in 2013, when A.B. was ten years old, Barrow had invaded her  privacy.  (Doc. 19-12, pp. 3-4). Following the non-jury trial, Judge Riley found Barrow liable exclusively for invasion of A.B.'s privacy rights -  and premised damages solely on that claim and not resulting from any other tortious or criminal conduct. (Doc. 19-12).

## III.    Standard of Review

The district court's grant and denial of summary judgment is reviewed *de novo. Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1390 (11th Cir. 1994). Under this standard, the appellate court applies the same legal standards as the district court and views all facts and reasonable inferences in the light most favorable to the non-moving party.

For cross-motions for summary judgment:

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. . . . The Court must consider each motion on its merits, resolving all reasonable inferences against the party whose motion is under consideration . . .  "[C]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment

13

unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."

*Ala. Space Sci. Exhibit Comm'n v. Markel Am. Ins. Co*., 557 F. Supp. 3d 1199, 1207 (N.D. Ala. 2021) (internal citations omitted).

## Summary of the Argument

This appeal presents a straightforward question of contract interpretation: When an insurance policy expressly permits "someone on [the insured's] behalf" to provide notice, may coverage be denied solely because notice came from a third party? Principles of contract interpretation and Alabama law compel a negative answer.

The district court's analysis rests on two fundamental errors that warrant reversal. First, the district court failed to give effect to the umbrella policy's explicit provision allowing notice from "someone on [the insured's] behalf." This language must be meaningful - yet the district court's interpretation renders it surplusage by requiring direct notice from the insured despite clear policy text to the contrary. When an insurance policy expressly provides alternative methods to satisfy a notice requirement, courts cannot question why one authorized method was chosen over another. Procedurally, A.B.'s counsel's notice fulfilled the policy's express requirement of notice as a condition precedent to coverage.

The district court compounded this error by misapplying Alabama precedent, relying on cases involving materially different circumstances. Both *Nationwide Mut. Fire Ins. Co. v. Estate of Files,* 10 So. 3d 533 (Ala. 2008) and *Travelers Indem. Co. v. Miller,* 86 So. 3d 338 (Ala. 2011) involved default judgments where insurers received no opportunity to defend. Here, by contrast,

15

Nationwide controlled the defense for nearly three years through trial. Moreover, neither *Files* nor *Miller* addressed policy language permitting third-party notice. While *Files* and *Miller* turned on the complete absence of any explanation for delayed notice, the record here contains concrete explanations the district court ignored: a ten-year-old child who could not have known about insurance coverage when her rights were violated, no awareness of an umbrella policy's existence, and counsel's prompt action upon discovering coverage - providing notice in the same 72-day timeframe Nationwide took to produce the policy itself.

Under Alabama law, ignorance of a policy's existence excuses delay in providing notice, and the trigger date for notice requirements commences when a party learns of and obtains the policy, not when the underlying occurrence happens. *Am. Liberty Ins. Co. v. Soules,* 288 Ala. 163, 169, 258 So. 2d 872, 876 (Ala. 1972).

Indeed, Nationwide's own representative acknowledged receiving constructive notice on November 9, 2018, *before* A.B.'s receipt of the policy. When both the policy language and the insurer's own admission recognize counsel's third-party notice as being valid - then the notice is valid.

The record demonstrates that notice through A.B.'s counsel was timely made and achieved precisely what Alabama courts require - it enabled full protection of the insurer's interests. After receiving notice through counsel's subpoena,

Nationwide investigated the claims, retained counsel, conducted discovery, controlled the litigation through trial and filed declaratory judgment actions.

The district court's second error lies in its misapplication of Rule 56. Rather than analyzing Judge Riley's judgment finding liability solely for invasion of privacy - conduct expressly covered under the policy - the district court began its opinion with inflammatory details about criminal conduct unrelated to coverage. When A.B. moved to strike these immaterial facts under Fed. R. Civ. P. 56(c)(2), the district court dismissed the objection, stating these facts "help provide a background and timeline of the case." (Doc. 53, p. 2, n.1). This approach effectively prejudiced the coverage analysis before it began, allowing a skewed narrative to supersede straightforward contract interpretation.

The relevant facts are undisputed: Judge Riley entered judgment based solely on three specific acts of invasion of privacy in 2013. (Doc. 19-12). The umbrella policy explicitly covers invasion-of-privacy claims under its personal injury provision. (Doc. 19-15, p. 8). Rather than construing these facts in the light most favorable to A.B., as Rule 56 requires, the district court considered prejudicial matters irrelevant to the summary judgment determination. This inverted approach invites affirmance based on facts having no bearing on coverage, erroneously suggesting the case involves non-covered acts rather than the invasion-of-privacy claims established at trial.

17

**Argument**

## I.    The District Court's Analysis Rests on Two Fundamental Errors That Warrant Reversal

This appeal presents a straightforward question of contract interpretation: when an insurance policy expressly permits "someone on [the insured's] behalf" to provide notice, may coverage be denied solely because notice came from a third party rather than the insured? The district court's ruling rests on two fundamental errors that disregard the umbrella's policy language and established Alabama law.

### A.    The Court Failed to Give Effect to the Policy's Express Language Allowing Third-Party Notice

The umbrella policy's language states that

4.  NOTICE.  You or **someone on your behalf must:**

a)    **as soon as reasonably practicable**, give us, our agent, or sales representative **written notice of an occurrence** to which this policy may apply. (Doc. 19-15, p. 14). (emphasis added).

This provision unambiguously allows notice from parties other than the insured.

Despite this express language, the district court concluded: "Because the court finds that [the insured's] Barrow's failure to comply with Condition 4(a) releases Nationwide from any duty to indemnify, the court addresses no other

18

argument raised by the parties." (Doc. 53, p.9). This conclusion effectively rewrites the policy by eliminating the explicit third-party notice provision.

Two dispositive facts resolve the notice issue. First, the policy speaks for itself: it expressly allows notice from "someone on [the insured's] behalf." (Doc. 19-15, p. 14). Second, Nationwide's representative speaks for the company: Whistler's affidavit not only acknowledges receipt of notice through counsel's subpoena, but by characterizing it as "constructive notice" received "at the very earliest, on November 9, 2018," he effectively concedes that A.B.'s counsel was an appropriate party to provide such notice. (Doc. 19-14, pp. 3-4). When both the policy language and the insurer's own admission recognize counsel's third-party notice as being valid -  then the notice is valid. For the district court to add to it and inquire as to why the insured failed to provide notice is to rewrite the policy and ignore the undisputed facts.

When an insurance policy expressly provides alternative methods to satisfy a notice requirement, demanding explanation for why one authorized method was chosen over another defies both logic and established principles of contract interpretation. The policy's plain language permits notice from either the insured 'or someone on [his] behalf.' Requiring A.B. to offer an explanation as to why Barrow himself did not provide notice - when notice from someone on his behalf was expressly authorized -  effectively nullifies the notice provision.

19

Most significantly, the district court ignored Nationwide's admission that it received valid constructive notice. Nationwide's representative stated by affidavit that ". . .  Nationwide was placed on constructive notice of the allegations against Barrow, at the very earliest, on November 9, 2018," following the issuance of a non-party subpoena by A.B.'s counsel to its local agent, Randy Jones. (Doc. 19-14, pp. 3-4). The district court's analysis makes no mention of this dispositive admission.

When a policy restricts notice to the policyholder alone, courts logically ask why that specific person failed to provide timely notice. But when a policy expressly allows notice from 'someone on behalf' of the policyholder, requiring an explanation for the policyholder's inaction serves no purpose - the policy itself contemplates and authorizes notice from other parties. The relevant inquiry then becomes whether the notice that was provided served its essential function under Alabama law: to enable the insurer to investigate and defend the claim

**B.**    **The District Court Misapplied *Files* and *Miller* By Ignoring Critical Distinctions**

The district court's reliance on *Files*, 10 So. 3d 533 (Ala. 2008) as the case most "on point" fundamentally misreads both Files and the policy at issue. The district court concluded that "*Files* makes clear that the excuse is tied to the policy

20

holder." (Doc. 53). This conclusion ignores three critical distinctions that make *Files* inapposite.

First, *Files* addressed materially different policy language that required notice directly from the policyholder / insured. As the Alabama Supreme Court observed in *Files*, "the Nationwide policy required Sanford [the named insured] to notify Nationwide of the altercation with Files 'as soon as practicable.'" *Files*, 10 So. 3d at 533. Critically, the policy in *Files* contained no provision allowing notice from "someone on [the insured's] behalf."

Second, *Files* turned on the complete absence of any explanation for delayed notice from anyone. Yet the district court transformed *Files'* straightforward holding - that a failure to explain a delay in notice is unreasonable - into an artificial requirement that A.B. must justify Barrow's personal failure to provide notice. This interpretation effectively nullifies the umbrella policy's express provision allowing third-party notice. (Doc. 19-15, p. 14).

Third, *Files* involved a default judgment where the insurer had no opportunity to defend its insured. Here, by contrast, Nationwide had full control of the defense for nearly three years through trial. Nationwide's counsel deposed A.B., defended Barrow's deposition, and represented Barrow at trial. (Doc. 28-1, pp. 7-8). This fundamental distinction from *Files* alone should have precluded its application here.

The district court's reliance on *Travelers Indem. Co.v. v. Miller,* 86 So. 3d 338 (Ala. 2011), suffers from the same flaws. Like *Files, Miller* involved a default judgment where the insurer received no opportunity to investigate or defend. As the Alabama court noted, "[the insurer] Travelers never had the opportunity to control the litigation because a judgment had been entered before Travelers had knowledge of the lawsuit." *Miller*, 86 So. 3d at 348. Here, by contrast, Nationwide conducted a thorough defense spanning nearly three years through trial.

Moreover, both *Files* nor *Miller* turned on the complete absence of any explanation whatsoever for delayed notice. It is impossible for a court to evaluate the reasonableness of a delay when no explanation is provided. Yet the district court relied on these "no explanation" cases to reject actual explanations in the record: A.B.'s minority status, her documented lack of knowledge about insurance, and her counsel's efficiency in providing notice once coverage was discovered - providing notice in the same 72-day timeframe that Nationwide took to produce the policy itself.

This misapplication of *Files* and *Miller* may stem from the district court's initial misunderstanding of this case as involving a default judgment. (Doc. 11). However, this case presents a materially different procedural posture - one where Nationwide had a full and fair opportunity to defend its insured. The fundamental

concern in *Files* and *Miller* - an insurer who never got to defend its insured - is entirely absent here.

The contrast with this case could not be starker. Here, Nationwide controlled the defense for 2 years and 9 months through the trial of the state court tort action. (Doc. 19-12; 28-1, pp. 7-8). During these proceedings, Nationwide's counsel deposed A.B., defended Barrow's deposition, and represented Barrow at trial. (Doc. 28-1, pp. 7-8). Nationwide filed declaratory judgment actions.

The prejudice that concerned the *Miller* court - an insurer's inability to protect its interests - is entirely absent here.

This misapplication of *Files* mirrors the reasoning in the first declaratory judgment action (Dec. Action I), where the district court similarly focused exclusively on Barrow's failure to provide notice and disregarded A.B.'s notice: "Mr. Barrow has defaulted. Therefore, he has offered no excuse or justification for not providing the required notice. And *A.B. likewise offers no evidence concerning the reasons for Mr. Barrow's failure* nor does she address the issue in her brief." *Nationwide Mut. Ins. Co. v. Barrow,* 4:19-cv-01019-ACA. (Doc. 38). (emphasis added).

This Court foresaw this exact problem in the first appeal. In his concurring opinion, Judge Jordan warned that the prior ruling might cast its shadow over the second suit like a "brooding omnipresence." *Nationwide Mut. Ins. Co. v. Barrow,*

23

29 F.4th 1299, 1305 (11th Cir. 2022). That prediction proved prescient when the district court adopted Dec. Action I's reasoning without analyzing the umbrella policy language or the notice provided by A.B.'s counsel.

### C.    The District Court Confused Condition Precedent with Who May Satisfy It

The district court conflates two distinct concepts: the existence of notice as a condition precedent (which is undisputed) with the artificial requirement that only the insured could satisfy this condition (which contradicts the policy's express terms). When a condition precedent can be satisfied by "someone" on the insured's behalf, and that condition was in fact satisfied, an insurer cannot escape coverage by demanding that the notice should have come from an alternative source.

The district court also conflates procedural compliance with substantive rights. While the timing and manner of notice are procedural requirements, the authority to give notice is a substantive right. By focusing solely on Barrow's failure to provide notice, the district court neglected to consider whether the notice given by A.B. fulfilled the essential purpose of notice under both the umbrella policy and Alabama law.

### D.    A.B.'s Notice Satisfied Its Essential Purpose Under Alabama Law

The Alabama Supreme Court has clearly explained that notice requirements serve a practical purpose: "An insurer must have timely notice of an event or

24

occurrence in order to form an intelligent estimate of its rights and liabilities under the policy, **to afford it an opportunity to investigate, to allow it to participate in the litigation, and to prevent fraud** . . . The purpose of a notice-of-lawsuit provision in an insurance policy is to give the insurer the opportunity to control litigation on which its contractual liability hinges." *Travelers Indem. Co. v. Miller*, 86 So. 3d 338, 347 (Ala. 2011) (internal citations omitted, emphasis added).

The notice provision operates as a simple condition precedent: once satisfied through any authorized method, it is fulfilled. Here, the undisputed evidence shows Nationwide received notice that accomplished precisely what the condition exists to achieve - enabling the insurer to investigate, defend, and protect its interests.

### E.    Alabama Law Establishes That Notice Requirements Are Triggered Upon Receipt of the Policy, Not the Date of Occurrence

Alabama law consistently measures the timeliness of notice by whether it was given "within a reasonable time in view of the facts and circumstances of the case." *Reeves v. State Farm Fire & Cas. Co*., 539 So. 2d 252, 255 (Ala. 1989). As the Alabama Supreme Court explained "[t]he determination of the fundamental issue, whether notice of the occurrence or claim was given to the insurer within a reasonable time, rests on the reasonableness of the delay."  *United States Fid. & Guar. Co. v. Baldwin Cnty. Home Builders Ass'n*, 770 So. 2d 72, 75 (Ala. 2000).

Critically, Alabama recognizes that lack of knowledge about insurance coverage constitutes an extenuating circumstance excusing delay. The Alabama Supreme Court has held that "**[i]gnorance of the existence of the policy generally frees a claimant from the limitation contained therein for filing proofs of loss** and he is entitled to file such proofs within a reasonable time **after learning of the existence of the policy and obtaining possession of it**." *Am. Liberty Ins. Co. v. Soules,* 288 Ala. 163, 169, 258 So. 2d 872, 876 (Ala. 1972) (quoting 14 GEORGE J. COUCH, COUCH ON INSURANCE § 49:424 (2d ed. 1982)). (emphasis added).

The district court failed to apply this established principle to the compelling facts before it.

Similarly, the Alabama Supreme Court upheld a finding that the delay was justified when the insured was unaware of the need to notify the insurer until later circumstances arose. In *Stonewall*, the insured testified that -

> **at the time of the accident he did not realize that he had insurance; that even after he found out he had insurance, he did not report the accident**, as he did not feel he was at fault. Evidence showed that he was not aware of any need to notify the company until he talked with an adjuster when he received the notice form the Department of Public Safety to comply with the Financial Responsibility Law. Lowe testified that Goodson told him at the time of the accident that he had hospital insurance.

> [The Court is] concerned with the question of whether the excuse
> given by Lowe, if believed by the jury, justified the delay in giving
> notice . . . It is only where there is no evidence tending to establish
> plaintiff's case that the court may direct a verdict for the defendant.

*Stonewall Ins. Co. v. Lowe*, 284 So. 2d 254, 257 (Ala. 1973). (emphasis added).

This rule should apply here with even greater force to a minor claimant unaware of the existence of coverage. *Middlesex Mut. Ins. Co. v. Wells*, 453 F. Supp. 808, 810 (N.D. Ala. 1978) (applying Alabama law and holding that a minor's **ignorance of his status as an omnibus insured** under his father's policy excused a delay in notice, specifically finding "Defendant's ignorance of the policy coverage during the year to year and a half after the accident, and the resulting delay, were justified. Defendant, **after learning of the policy's coverage**, did not delay unreasonably in giving the insurer notice.").  (emphasis added).

The Alabama Supreme Court's holding in *Soules* establishes the trigger date for notice commencing from the date the party first learns of the policy's existence -  not the date of the accident or occurrence.  Thus, in A.B.'s case, the trigger date for providing notice is the date that Nationwide supplied the umbrella policy to A.B.'s counsel, January 20, 2019 -  not October, 2013.

Any ostensible "delay" in providing formal notice is appropriately measured in days, not years.  Specifically, 72 days from January 20, 2019 (the date Nationwide produced the policy) to April 2, 2019 (the date of formal notice).

27

However, given Nationwide's admission that it received constructive notice two months *before* the policy was produced establishes an absence of delay.

As to evidence of extenuating circumstances, the undisputed evidence before the district court was that A.B. was a child of ten years old when her rights were violated in 2013, and she testified that at that age she "did not know what insurance was." (Doc. 28-14). Even if told to inform someone with an insurance company about what had happened, she "would not have known whom to contact." Nor did she trust anyone. (Doc. 28-14, p. 2).

If Alabama makes allowance for an insured's delay due to ignorance of coverage from a policy that the insured purchased - a principle grounded in the reasonable expectations of adults responsible for their own affairs - then *a fortiori*, a ten-year-old child claimant should even more so be excused for any ostensible delay in notice.

This principle finds support in other jurisdictions - as the Supreme Court of Rhode Island noted:

> While compliance with a notice provision is required both by an additional as well as by a named insured, it often happens, as it did here, that a person protected under the omnibus clause lacks any knowledge of the existence of the insurance in his behalf. The courts recognize that coverage for him should not depend on the vigilance of the named policyholder in giving timely notice, and **they consider his ignorance as an extenuating circumstance excusing his failure to comply.**

28

*Cinq-Mars v. Travelers Ins. Co.,* 100 R.I. 603, 611, 218 A.2d 467, 472 (1966). (emphasis added).

Here, A.B.'s counsel began seeking insurance information even before the Barrows filed their Answer in the AFTA lawsuit, serving discovery requests about possible umbrella policies on May 23, 2018. (Doc. 28-1, p. 3; Doc. 28-3, pp. 2, 8). Despite Barrow's initial objections on August 6, 2018, counsel persisted and obtained materials from Ann Barrow on September 20, 2018. (Doc. 28-1, p. 4; Doc. 28-7, pp. 2-5).

Within five days of receiving these materials, counsel wrote to confirm Barrow's connection to Nationwide, though Ann's counsel incorrectly believed no umbrella policy existed. (Doc. 28-1, p. 5; Doc. 28-10, p. 2). Counsel then promptly issued a Notice of Intent to Serve a Subpoena on Nationwide on October 16, 2018, with the subpoena served on November 9, 2018.

Significantly, Nationwide took 72 days to produce the umbrella policy, finally doing so on January 20, 2019. (Doc. 28-1, p. 6; Doc. 28-13, pp. 2-5). Counsel then acted with matching efficiency - reviewing the policy, engaging coverage counsel within four days, and providing formal notice to Nationwide on April 2, 2019 - exactly the same 72-day timeframe that Nationwide had taken to produce the policy. (Docs. 28-1, pp. 6-7; 19-16, pp. 3-4).

29

Consider what actually happened here: Nationwide took 72 days to produce its policy; counsel then took 72 days to provide notice. The district court, however, chose to ponder what might have happened - specifically, why the insured did not provide notice at some earlier time. In doing so, the district court bypassed the undisputed explanations in the record.

## F.    Alabama Courts Have Consistently Excused Substantial Notice Delays When Justified By Circumstances

This misplaced focus cannot be reconciled with Alabama precedents requiring courts to consider the totality of circumstances surrounding notice. Alabama courts have upheld verdicts excusing substantial delays in providing notice when justified by circumstances. For instance, the Alabama Supreme Court has approved delays, upholding a verdict excusing a twenty-two month delay in *Dill v. Colonial Ins. Co. of Cal.,* 569 So. 2d 385 (Ala. 1990) and holding that a two-year delay in notifying the insurer of a claim raised a factual issue as to reasonableness in *U.S.F. & G. Co. v. Baldwin County Home Builders Ass'n*, 770 So. 2d 72 (Ala. 2000).  See *United States Fid. & Guar. Co. v. Bonitz Insulation Co.,* 424 So. 2d 569 (Ala. 1982) where a four-year delay was not unreasonable as a matter of law and properly submitted to a jury.

The Alabama Court of Civil Appeals' decision in *Hackleburg Church of Christ v. Great American Insurance Companies*, 675 So. 2d 1309, 1312 (Ala. Civ.

App. 1995), provides particularly compelling guidance. There, despite a policy requiring "immediate" notice, the court held that a seven-year and eight month delay did not bar coverage as a matter of law stating that "[t]he extenuating circumstances of this case, however, make us unwilling to hold that the seven-year delay was unreasonable as a matter of law." *Id.* at 1312.

The timeline here demonstrates reasonable notice was provided as a matter of law.

### G.    The District Court's Approach Invites Speculation Over Undisputed Evidence

The district court's requirement that A.B. speculate about Barrow's reasons for not providing notice serves no logical purpose, nor is she required to do so by Alabama law. Even if A.B. had attempted such speculation - remembering she was only 10 years old when the incidents occurred - her conjecture about Barrow's motivations would have provided no practical benefit to Nationwide in handling Barrow's defense or managing the claim. The purpose of requiring an explanation for delayed notice is to allow courts to evaluate the actual reasons for delay, not to engage in speculation about an insured's unstated motivations.

The trial court itself recognized that "A.B. and Barrow's interests are aligned," acknowledging their shared interest in having Nationwide satisfy the judgment. (Doc. 11, p. 4). This alignment demonstrates the logical reality:

31

counsel's notice to Nationwide served both A.B. and Barrow's interests, thus constituting notice "on [his] behalf" under the policy's express terms.

Rather than analyzing A.B.'s explanation for when notice was provided and, then, determining whether notice fulfilled its fundamental purpose, that is, enabling the insurer to protect its interests - the district court transformed a straightforward notice provision into a procedural maze, demanding explanations for paths not taken while ignoring the path successfully completed.

## II.    The District Court Erred by Basing Its Coverage Analysis on Conduct Outside the State Court Judgment and by Failing to Follow Rule 56 Standards

The district court's analysis strayed from fundamental principles of contract interpretation and Rule 56 standards from its very first paragraph.

Instead of beginning its analysis with the state court judgment establishing liability solely for invasion of privacy - conduct expressly covered under the policy - the district court led with inflammatory details unrelated to coverage. This inverted sequence compromised the entire analysis.

The memorandum opinion opens not with Judge Tim Riley's judgment or a discussion of the policy terms - the material facts relevant to coverage - but with prejudicial conduct outside the coverage determination. When A.B. moved to strike these immaterial facts under Rule 56(c)(2), the district court dismissed the

objection, claiming these facts "help provide a background and timeline of the case" (Doc. 53, p. 2 n.1).

This ruling fundamentally misapplied Rule 56, which requires courts to focus on material facts. More troublingly, the district court's prejudicial framing invites affirmance on grounds unrelated to the notice issue properly before this Court. See *Harris v. United Auto. Ins. Grp., Inc*., 579 F.3d 1227, 1232 (11th Cir. 2009) (Appellate courts may affirm on any ground supported by the record).

An indemnity analysis depends on the state court judgment and policy language. The Alabama Supreme Court confirms that "[w]hether there is a duty to indemnify under the policy will depend on the facts adduced at the trial." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank,* 928 So. 2d 1006, 1013 (Ala. 2005).

The relevant facts are straightforward and undisputed: Judge Riley's judgment rests solely on three specific acts of invasion of privacy in 2013 (Doc. 19-12). The umbrella policy explicitly covers invasion-of-privacy claims under its personal injury provision (Doc. 19-15, p. 8). Rather than construing these facts in the light most favorable to A.B., as Rule 56 requires, the district court allowed extraneous details to color its entire analysis of both coverage and notice.

This approach not only violates Rule 56's clear mandate to consider only material facts, it effectively invites this Court to affirm on improper grounds. By emphasizing inflammatory details about criminal conduct rather than the covered

invasion-of-privacy claims established at trial, the district court's analysis suggests a path to affirmance that would circumvent both the state court judgment and the policy's plain language.

Such an approach would undermine fundamental principles of federalism by disregarding a state court's factual findings and would contravene established precedent requiring courts to analyze coverage based on "facts adduced at the trial." *Hartford Cas. Ins. Co.*, 928 So. 2d at 1013. This Court should reject any invitation to affirm based on the trial court's narrative having no bearing on the actual coverage determination.

## Conclusion

Alabama law requires that notice be provided as a condition precedent to coverage.  Here, that notice was provided by A.B.'s counsel, and Nationwide admitted as much.  Nationwide made a tactical decision in asking the district court to allow the parties to brief the issue of notice first and separately from any other coverage issues. Nationwide requested this because they knew that their position on policy exclusions would collapse under scrutiny:  the umbrella policy covered invasion of privacy, the state tribunal found Barrow invaded A.B.'s privacy.

Instead, Nationwide placed their proverbial eggs in the notice basket. However, when it came to notice - under Alabama law, A.B. had provided

constructive notice *before* receipt of the policy and then provided formal notice soon thereafter.  If there ever was an extenuating circumstance in a case – it is expecting a 10 year old child to provide notice pursuant to an umbrella policy she did not know existed.

However, with nothing left to attack, Nationwide targeted their own insured's silence.  In order to effectively make that argument – Nationwide had to ignore the third-party notice provision it wrote (and, more importantly, convince the trial court to ignore it as well).  The one thing Nationwide had in its favor on this point is that insurance policies can be confusing.  As undersigned counsel's former law partner was known to say, "the large print 'giveth' and the fine print 'taketh away.'"

Ultimately, the trial court failed to appreciate the third-party notice provision and, further, by relying on those cases cited by Nationwide as precedent: Alabama cases that lacked third-party notice provisions, cases where no explanation for a delay was offered by anyone, and default judgments had been taken against the insureds.  In other words, cases vastly different from A.B.'s case.

As such, Nationwide's arguments regarding notice managed to create noise for the trial court, but the signal remains the same: the condition precedent for notice was satisfied here -  notice was timely given, the purposes for notice were

fulfilled - *Nationwide was allowed to protect its interests* -  both in the state court and, now, three times in federal court.

A.B. asks this Court to now protect *her* interests and issue a ruling that reverses the district court's decision in favor of Nationwide and hold that the notice she provided was effective, timely and reasonable as a matter of law under the facts and circumstances of this case.

/s/Gregory A. Reeves
ASB-8179-E57G
Attorney for A.B.

Reeves Law Firm
232 Moulton St E
Decatur, AL 35601
256.355.3311
greg@reeveslaw.net

**Certificate of Compliance**

Pursuant to Rules 32(a)(5) and 32(a)(7)(B) of the Rules of the United States Court of Appeals for the Eleventh Circuit, the undersigned counsel for Appellants hereby certifies that this brief exceeds thirty pages of text required to be counted under the 11th Circuit Rule 32-4. However, it complies with the 13,000 word limitation of F.R.A.P. 32(a)(7)(B)(i) (containing 7,497 words) as well as the typeface and style requirements as this brief has been prepared in a proportionally spaced typeface using Word and is typed in 14 point Times New Roman Font.

**Certificate of Service**

This is to certify that I have this day filed the within and foregoing BRIEF OF APPELLANTS electronically and by placing seven bound copies in the hands of a courier for delivery to the Court within three days. Also, I have this day served counsel for the opposing party with a copy of the within and foregoing via U.S. Mail and email, addressed as follows:

Hon. Jim Beck
Hill, Hill, Carter, Franco, Cole & Black P.C.
425 South Perry Street
Montgomery, AL 36104

/s/Gregory A. Reeves